IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANTHONY DONTE HARDY,

        Plaintiff,

        v.

J. DAVIS, et al.,

        Defendants.

No. 03:11-cv-00518-HZ

OPINION & ORDER

Anthony Donte Hardy
12391336
Oregon State Penitentiary
2605 State Street
Salem, OR 97310-0505

    Pro Se

John R. Kroger
Jacqueline Kamins
Andrew D. Hallman
OREGON DEPARTMENT OF JUSTICE

1 - OPINION & ORDER

CCR Section
1162 Court Street, NE
Salem, OR 97301

      Attorneys for Defendants

HERNANDEZ, District Judge:

      This action arises out of a physical altercation between Anthony Donte Hardy ("Plaintiff"), a prisoner at the Oregon State Correctional Institution ("OSCI"), and Jared Davis ("Davis"), a correctional officer at OSCI, on July 23, 2010. Based on the July 23, 2010, altercation with Plaintiff, Davis issued a misconduct report the same day, July 23, 2010, stating that Plaintiff violated three Rules of Inmate Prohibited Conduct ("RIPC"), namely RIPC 2.01 (Staff Assault), 2.10 (Disrespect I), and 4.40 (Unauthorized Area I). Davis Decl., ¶ 9; Id., Attach. 2, p. 1. On July 29, 2010, a disciplinary hearing regarding Davis's July 23, 2010, misconduct report was held before Hearing Officer Phil Montgomery ("Montgomery"). Montgomery Decl., ¶ 6. Montgomery found that Plaintiff had violated RIPC 2.01, 2.10, and 4.40. Id.

      Plaintiff filed this action on April 25, 2011, pursuant to 42 U.S.C. § 1983 ("§ 1983) against Davis, Montgomery, and other employees of the Oregon Department of Corrections ("ODOC"): Closson, Hernandez, Sergeant Aly ("Aly"), Hannon, and Mark Nooth (collectively, "Defendants").[1] Plaintiff alleges Defendants violated his Eighth Amendment rights when they used excessive force to subdue him and violated his Fourteenth Amendment rights when they denied him the opportunity to present witness and photographs taken of him after the July 23, 2010, altercation at his July 29, 2010, disciplinary hearing. Plaintiff seeks $20,000 from each of the Defendants, an order

---

[1] The materials in the record do not disclose the full names of all of the Defendants.

2 - OPINION & ORDER

reinstating his good-time credits which were revoked pursuant to the July 29, 2010, disciplinary hearing, and a "keep away" order against Davis. Compl., p. 5.

Now before me is Defendants' Motion for Summary Judgment ("Motion") (doc. #20) against all of Plaintiff's claims. For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

Plaintiff's first claim for relief alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment. It alleges the following:

On July 23, 2010, Plaintiff was involved in a verbal altercation with Davis. Id., p. 3. During the altercation, Davis ordered Plaintiff to "stand in the hall" so that Davis could call a response team to take Plaintiff to the Disciplinary Segregation Unit ("DSU"). Id. While passing Davis to "stand in the hall", Plaintiff told Davis, "Fuck you and the hole." Id. Davis "completely lost it" and pushed Plaintiff up against the wall and punched him in the face, threw him to the ground, and continued to punch Plaintiff. Id., pp. 3-4. Correctional officer Closson and Aly then jumped on top of Plaintiff and handcuffed him. Davis, however, continued to punch Plaintiff "in the face and head" while he was handcuffed.[2] Id., p. 3. Correctional officers Closson and Hernandez then took Plaintiff to the DSU. Id., p. 4.

---

[2] The record shows that after the July 23, 2011, altercation with Davis, Plaintiff had "abrasions on his left elbow, the back of his left shoulder, his right shoulder, left cheek, left temple, right cheek, and the fifth digit on his right hand". See Rucker Decl., ¶ 7; Hicks Decl., Attach. 9, p. 3. The record also shows there was "a scratch beneath [Plaintiff's] right temple area and on [sic] a small cut on his lower lip." See Hicks Decl., Attach. 9, p. 3.

3 - OPINION & ORDER

Plaintiff's second claim for relief alleges violations of his due process and equal protection rights under the Fourteenth Amendment. Compl., p. 4. It alleges the following:

On July 24, 2010, prior to his disciplinary hearing, Plaintiff submitted a request that there be an investigation of the July 23, 2010, altercation, that Plaintiff be allowed to have witnesses at the July 29, 2010, hearing, and that the photographs taken of Plaintiff after the July 23, 2010, altercation be made available at the July 29, 2010, hearing.

On July 29, 2010, a disciplinary hearing was held before Hearing Officer Phil Montgomery ("Montgomery"), who stated that Plaintiff's "request's [sic] . . . would not change or mitigate the violation and that [Plaintiff] did not have the right to defend [him]self if assaulted by staff." Id.

## STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" Id. at 324 (quotation omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ." Id. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. Failure to Exhaust Administrative Remedies

Defendants contend Plaintiff's claims should be dismissed because he did not seek review of Davis's misconduct report as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff responds that he exhausted his administrative remedies when his "grievance" was denied by Grievance Coordinator Teresa Hicks ("Hicks") and when he "filed for review of his disciplinary sanction and it went unanswered". Opp'n, pp. 2-3. Plaintiff also asserts that a review of Davis's misconduct report was not "sufficiently identified" and that Defendants "have not alleged that [P]laintiff failed to exhaust his excessive force claim and, therefore, this claim is not subject to summary judgment for failure to exhaust." Id. Finally, Plaintiff contends that

a review by the Inspector General would have been "futile" because Defendants already "assume[d] that [P]laintiff assaulted . . . Davis". Id.

Plaintiff's arguments are unavailing. The PLRA requires a prisoner to exhaust his administrative remedies before filing a lawsuit concerning prison conditions. See 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted.

Id.

The Supreme Court has held that "proper exhaustion of administrative remedies is necessary." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Proper exhaustion requires that a prisoner comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. There is, however, an "exception to the PLRA's exhaustion requirement". Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). The exception applies "where a prison official renders administrative remedies effectively unavailable by improperly screening a prisoner's grievances." Id. To show a prison official rendered administrative remedies "effectively unavailable", the "prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening." Id.

> In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

6 - OPINION & ORDER

Id. at 823-24.

Relevant evidence demonstrating that relief remained available "include[s] statutes, regulations, and other official directives that explain the scope of the administrative review process . . . ." Brown v. Valoff, 422 F.3d 926, 937 (9th Cir. 2005). Relevant evidence also includes "documentary or testimonial evidence from prison officials who administer the review process . . . and information provided to the prisoner concerning the operation of the grievance procedure . . . ." Id. "[T]he court may look beyond the pleadings and decide disputed issues of fact" and may determine whether "the prisoner has [or has] not exhausted nonjudicial remedies". See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citation omitted).

Noted above, Davis issued his misconduct report on July 23, 2010. The following day, July 24, 2010, Plaintiff filed a Grievance Form grieving that Davis, Aly, and Closson had assaulted him and used excessive force. Hicks Decl., ¶ 30; Id., Attach. 9, pp. 2-3. Plaintiff's July 24, 2010, Grievance Form requested that Hicks view the photographs of his "bruised and bloody face and head" taken after his July 23, 2010, altercation with Davis. Id., Attach. 9, p. 3. Plaintiff's July 24, 2010, Grievance Form also stated his intention to call witnesses and present photographs of his "bruised and bloody face and head" at the July 29, 2010, disciplinary hearing. Id. In response to Plaintiff's July 24, 2010, Grievance Form, Hicks sent Plaintiff an Inmate Complaint Receipt Memo ("Memo") dated July 27, 2010. The Memo informed Plaintiff that his "[i]ssue was not grievable" because it involved a misconduct report and complained about "use of force" and therefore, "ha[d] a separate appeal/review process". Id., p. 1.

On July 29, 2010, Plaintiff's disciplinary hearing was held and Montgomery found that Plaintiff was in violation of RIPC 2.01, 2.10, and 4.40 as alleged in Davis's July 23, 2010, misconduct report. Montgomery Decl., ¶¶ 4-5, 6; Id., Attach. 2, p. 10. The same day, July 29, 2010, Plaintiff sent an Inmate Communication Form to Nooth, the Superintendent at OSCI, requesting that his case be "reopen[ed] and investigated on the grounds that [he] . . . were [sic] denied to call upon witnesses . . . and photo's [sic] of [his] brused [sic] and bloody face and head . . . were not present at [his] hearing as . . . requested." Opp'n, Ex. 5, p. 2. Nooth responded to Plaintiff in a letter dated August 2, 2010, informing Plaintiff that he was required to "appeal through the Inspector General", explicitly citing and quoting Rule 291-105-0085 of the Oregon Administrative Rules ("OAR"). Opp'n, Ex. 5, p. 1.

On August 2, 2010, Montgomery issued a Findings of Fact, Conclusions, and Order ("Order") finding Plaintiff had "caused physical injury to an employee" in violation of RIPC 2.01, had "directed hostile . . ., abusive or threatening language or gestures . . . involv[ing] a physical threat" in violation of RIPC 2.10, and "was present or failed to be present, in [a] location not designated by assignment, programmed activity, call out or staff directive, which create[d] a threat to the safety, security or orderly operation of the facility" in violation of RIPC 4.40. Montgomery Decl., ¶¶ 6-7; Id., Attach. 2, p. 1. Based on his findings, Montgomery recommended that Plaintiff be sanctioned "120 days disciplinary segregation with a 50% upward deviation for a total of 180 days in disciplinary segregation . . . due to the existence of the aggravating factor that the timing and location of the misconduct directly threatened the safety, security, or orderly operation of the facility significantly more than typical for such misconduct." Id.,

¶ 7; Id., Attach. 2, p. 2. Montgomery "also recommended a $100.00 disciplinary fine and retraction of 40.77 days earned time credit".[3] Id. On August 3, 2010, the Functional Unit Manager affirmed Montgomery's recommendations. Id., ¶ 7; Id., Attach. 2, p. 3.

It was not until November 17, 2010, that Plaintiff filed an Inmate Communication Form with the Inspector General, which inquired "about [his] appeal" of his sanctions relating to his July 23, 2010, altercation with Davis. Opp'n, Ex. 2, p. 1. Although Plaintiff's November 17, 2010, Inmate Communication Form states that he sent a "kite on 8/8/10" requesting an appeal of his sanctions, Plaintiff presents no evidence of the August 8, 2010, kite he allegedly sent to the Inspector General.[4] Id.; Id., Ex. 3, p. 1. To the contrary, the evidence on which Plaintiff relies shows that Plaintiff did not send any kite to the Inspector General on August 8, 2010, where the Inspector General responded to Plaintiff's November 17, 2010, inmate communication on December 3, 2010, stating that he had "never received any paperwork" from Plaintiff and explicitly instructed Plaintiff "to complete a . . . Petition for Administrative Review (form CD 1442) within 60 days of the final order on [Montgomery's] finding of fact." Opp'n, Ex. 2, p. 1.

Based on the record before me, I conclude that the screening of Plaintiff's July 24, 2010, grievance was not inconsistent with or unsupported by the applicable regulations. See Sapp, 623 F.3d at 823-24. OAR 291-109-0140 states that "[a]n inmate cannot grieve the following: . . . [m]isconduct reports, investigations leading to or arising from misconduct reports, or disciplinary hearings, findings and sanctions . . . ." OAR 291-109-0140(3)(e). Because Plaintiff was grieving the July 23, 2010, misconduct report, the

---

[3] Montgomery also recommended "28 days loss of privileges upon release from disciplinary segregation[, but] . . . suspended this sanction pending no major rule violation." Montgomery Decl., ¶ 7; Id., Attach. 2, p. 2.
[4] The term "kite" means "an inmate communication". Reply, p. 4.

denial of his complaint in his July 24, 2010, Grievance Form was not improper. See OAR 291-109-0140(3)(e).

In addition, Plaintiff failed to exhaust his administrative remedies before filing this action as required under the PLRA. OAR 291-105-0085 provides:

> Any order for rule violations on Level I or Level II of the major violation grid or, which recommends an extension of the inmate's parole release date or retraction of earned time, statutory good time or extra good time credits; or which recommends a deviation from the segregation sanction listed on the grid is subject to review by the Inspector General.

OAR 291-105-0085(1).

The OAR further states that "[p]etitions for administrative review must be filed by the inmate with the Inspector General within 60 calendar days after the Final Order is signed by the functional unit manager or his/her designee or after a preliminary order becomes the Final Order under OAR 291-105-0031."[5] OAR 291-105-0085(2). "Upon receipt of the petition for administrative review, the Inspector General . . . shall review the case to determine . . . [whether] (a) . . . there [was] substantial compliance with the rule . . .; (b) . . . the finding [was] based upon a preponderance of evidence; and (c) . . . the sanction imposed [was] in accordance with the provisions . . . ." OAR 291-105-0085(4). The Inspector General is required to "provide the inmate with a written response to the petition for administrative review within 60 days from the date it is received by him/her." OAR 291-105-0085(7).

---

[5] OAR 291-105-0031 states that "[w]ithin ten working days following the conclusion of the hearing [concerning a misconduct report], the hearings officer shall prepare and issue a preliminary order containing the hearings officer's findings of fact and conclusions of law. Once issued, the preliminary order shall be delivered to the functional unit manager or designee for his/her review." OAR 291-105-0031(1).

10 - OPINION & ORDER

Because the August 2, 2010, Order "was an order for rule violations on Level I or Level II of the major violation grid", recommended retraction of Plaintiff's earned time, and recommended "deviation from the segregation sanction on the grid", it was only appealable and subject to administrative review by the Inspector General. See OAR 291-105-0085(1); see also Montgomery Decl., ¶ 9. Pursuant to OAR 291-105-0085, Plaintiff had until October 2, 2010–60 days from the date the Functional Unit Manager affirmed Montgomery's recommendations–to file a petition for administrative review with the Inspector General. OAR 291-105-0085(2). Hicks's July 27, 2010, Memo specifically informed Plaintiff that the July 23, 2010, misconduct report and complaint concerning use of force was not grievable because it had a "separate appeal/review process". Hicks Decl., Attach. 9, p. 1. Additionally, Nooth's August 2, 2010, letter expressly informed Plaintiff that his avenue for redress was to appeal Montgomery's Order to the Inspector General pursuant to OAR 291-105-0085. Opp'n, Ex. 5, p. 1. The only evidence suggesting that Plaintiff properly followed the advice given–namely, that he timely submit a kite to the Inspector General–is Plaintiff's bald assertion that he did so and the untimely Inmate Communication Form he sent to the Inspector General on November 17, 2010. See Opp'n, Ex. 2, p. 1. Notably absent from the volume of evidentiary submissions supporting Plaintiff's opposition to Defendants' motion, including the meticulous copies of the kites Plaintiff kept and the other documents Plaintiff maintained and submitted to this court as a record of his interactions with Defendants and the Inspector General, is the kite Plaintiff allegedly sent to the Inspector General on August 8, 2010. In fact, the August 8, 2010, kite is nowhere to be found in the entire record before me.

11 - OPINION & ORDER

Based on the evidence presented by both parties, I simply cannot conclude that Plaintiff timely sent a kite to the Inspector General on August 8, 2010, petitioning for administrative review of the Order to the Inspector General. Plaintiff's decision to disregard the requirement that he timely appeal his sanctions to the Inspector General within 60 calendar days after the Functional Unit Manager affirmed Montgomery's Order, and Plaintiff's decision to ignore the explicit instructions that he make an appeal to the Inspector General pursuant to OAR 291-105-0085 were fatal.[6] See Brown, 422 F.3d at 941 ("prisoners are obligated to navigate all a prison's administrative review process regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible") (citation and internal quotation marks omitted); see also Woodford, 548 U.S. at 83-84, 88, 93 (an inmate generally cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal"). Accordingly, Plaintiff's claims are dismissed without prejudice. See Wyatt, 315 F.3d at 1119 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.") (Citation omitted).

## II. Eighth Amendment Claims Against Davis, Closson, Hernandez, and Aly

Plaintiff contends that Closson, Hernandez, and Aly used excessive force against him and thus violated his Eighth Amendment rights. "When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be

---

[6] Plaintiff's argument that administrative review by the Inspector General would have been "futile" and "would not have changed anything" is unavailing. Opp'n, p. 3. The mere possibility that administrative review by the Inspector General may not have achieved Plaintiff's desired results is insufficient to justify his decision to ignore the appellate procedures he was required to follow, let alone establish that administrative remedies were effectively unavailable.

free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). "The core judicial inquiry . . . [i]s not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (citations and quotation marks omitted). In determining whether the use of force was wanton and unnecessary, a court may consider the following factors: (1) "the extent of injury suffered by an inmate"; (2) "the need for application of force" and "the relationship between that need and the amount of force used"; (3) "the threat reasonably perceived by the responsible officials"; and (4) "any efforts made to temper the severity of a forceful response." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citation and quotation marks omitted). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (citation and quotation marks omitted). The Eighth Amendment's prohibition of cruel and unusual punishments "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Solis v. McKessen, 465 Fed. Appx. 709, 709 (9th Cir. 2012) (quoting Hudson, 503 U.S. at 10).

Viewing the evidence in the light most favorable to Plaintiff, I conclude there is no triable issue of fact that Closson, Hernandez, and Aly used excessive force in violation of Plaintiff's Eighth Amendment rights. Plaintiff makes no argument whatsoever as to how Closson, Hernandez, and Aly used excessive force against him. More important, the

13 - OPINION & ORDER

evidence presented by Plaintiff does not create a triable issue of fact that Closson, Hernandez, and Aly used excessive force. Plaintiff merely states that "[a]s [he] hit the floor[,] . . . Clossom and Aly arrived and immediately jumped on top of [him and] place[d] [him] in wrist restraints". Opp'n, Ex. 3, ¶ 6. Plaintiff's own evidence–namely statements by Joseph Swift ("Swift"), another inmate at OSCI, merely shows that Aly and Hernandez "pulled . . . Davis off of [Plaintiff]" and held Davis back as Clossom and Hernandez officer took Plaintiff to the DSU. Opp'n, Ex., 4, pp. 1-2. Based on the evidence before me, I conclude that Plaintiff fails to create a triable issue of fact as to whether Closson, Hernandez, and Aly acted maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline. See Wilkins, 130 S. Ct. at 1178. Defendants' motion for summary judgment as it pertains to Closson, Hernandez, and Aly is granted.[7]

### III. Whether Plaintiff's Due Process Claims Are Barred

Defendants contend that Plaintiff's due process claim is barred because a habeas corpus proceeding, not a civil proceeding brought pursuant to § 1983, as here, is the proper mechanism to address whether Plaintiff is entitled to the restoration of good-time credits. See Compl., ¶ 5; Montgomery Decl., ¶¶ 4-5, 6; Id., Attach. 2, p. 10. Plaintiff

---

[7] Defendants contend Plaintiff's allegations against Davis for excessive force fail because it was Plaintiff who "struck" Davis and because Plaintiff's injuries are de minimus. Plaintiff, however, presents evidence showing that Davis hit Plaintiff first and that Davis continued to hit him even after he was in wrist constraints. Resp., Ex. 3, p. 1; Id., Ex. 4, p. 1; Montgomery Decl., Attach. 2, pp. 13-14. Accordingly, Plaintiff creates a genuine issue of material fact as to whether Davis used excessive force under the circumstances here. See Wilkins, 130 S. Ct. at 1178-79 ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Despite my determination, I conclude that Plaintiff's claims against Davis must still be dismissed because Plaintiff failed to properly exhaust all available administrative remedies.

responds that his due process claims are cognizable because he "is also seeking money damages" and because he was improperly "denied . . . access to witnesses". Opp'n, pp. 7-8.

Plaintiff's arguments miss the mark. "When a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, . . . § 1983 is not an available remedy." Skinner v. Switzer, 131 S. Ct. 1289, 1298 (2011) (citation and quotation marks omitted). On the other hand, "if . . . the plaintiff's action, even if successful, will not demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed . . . ." Id. Even if the restoration of a respondent's good-time credits "would not have resulted in [the respondent's] immediate release, but only in shortening the length of [his] actual confinement in prison, habeas corpus [is the] . . . appropriate remedy." Preiser v. Rodriguez, 411 U.S. 475, 487 (1973).

Here, Plaintiff's due process claim seeks to invalidate Montgomery's August 2, 2010, Order on the basis that Plaintiff was not allowed to present witnesses and photographs. It is clear that a favorable judgment in Plaintiff's favor would necessarily result in restoration of Plaintiff's revoked good-time credits and would therefore "necessarily demonstrate the invalidity of [Plaintiff's] confinement or its duration". See Wilkinson v. Dotson, 544 U.S. 74, 75 (2005) (citation omitted). Accordingly, it would be improper to allow Plaintiff to challenge "the fact or duration of his confinement" by collaterally attacking them through this § 1983 action. See Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction is available under 28 U.S.C. sec. 2241 for a prisoner's claims that he has been denied good time credits without due process of law."). The fact that Plaintiff also seeks monetary damages in addition to his

15 - OPINION & ORDER

equitable relief does not necessarily make Plaintiff's § 1983 action proper. See Muhammad v. Close, 540 U.S. 749, 750-51 (2004) ("Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably damages, but on allegations that not only support a claim for recompense, but imply the invalidity either of an underlying conviction or of a particular ground for denying release short of serving the maximum term of confinement."); see also Wilkinson, 544 U.S. at 81-82 ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

In summary, because Plaintiff's success regarding his due process claims would necessarily demonstrate the invalidity of his confinement or its duration, the relief Plaintiff seeks in this § 1983 action is improper.[8]

**IV. Hannon and Nooth**

Defendants argue that Hannon, the Security Manager at OSCI, and Nooth are entitled to summary judgment because they were not personally involved in the alleged deprivation of Plaintiff's constitutional rights. Plaintiff asserts that although Hannon and Nooth "may have arguably been unaware of their officer's wrongdoing, initially, [P]laintiff alerted them to this fact in communications after the assault on [P]laintiff occurred . . . [and] were also made aware of the deprivations in the disciplinary

---

[8] Having so concluded, I decline to address Defendants' alternative argument that Montgomery is entitled to summary judgment because Montgomery did not in fact deny Plaintiff's due process rights at the July 29, 2010, disciplinary hearing.

16 - OPINION & ORDER

hearings." Opp'n, p. 8. Plaintiff also contends that Hannon and Nooth "have respondeat superior responsibility" and therefore are not entitled to summary judgment. Id.

"Liability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1046 (9th Cir. 1989) (citations omitted). There is, however, "no respondeat superior liability under section 1983." Id. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

The Complaint is absent any factual allegations supporting Plaintiff's claims against Hannon and Nooth. See Compl., p. 4. The only factual allegation concerning Hannon and Nooth is that Plaintiff "wrote to Security Manager A. Hannon requested [sic] to press charge [sic]." Id. More important, Plaintiff fails to present any evidence creating a triable issue of fact that Hannon or Nooth participated in or directed his alleged civil rights violations or knew of the violations and failed to prevent them. Defendants' motion for summary judgment against Plaintiff's claims against Hannon and Nooth are granted.[9]

///

///

///

---

[9] I decline to address Defendants' argument that they are entitled to qualified immunity because it does not affect my ultimate determination that Plaintiff's claims must be dismissed.

17 - OPINION & ORDER

## CONCLUSION

For the reasons stated above, Defendants' Motion (doc. #20) is GRANTED.

IT IS SO ORDERED.

Dated this 27 day of Sept., 2012.

*[signature]*
MARCO A. HERNANDEZ
United States District Judge